THE INDEX PRINTING COMPANY, v. THE BOARD OF SUPERVISORS OF MUSCATINE COUNTY ET AL., Appellants.

**Counties:** PROCEEDINGS OF SUPERVISORS: OFFICIAL PUBLICATION. The action of a board of supervisors in auditing and certifying the expenses of a primary election are a part of its proceedings which should be published in the official newspaper of the county.

**Same.** Proceedings of the county board of supervisors in canvassing the votes at general elections and declaring the names of successful candidates for county offices are proceedings of the supervisors which are required to be published.

**Same.** The record required to be made by the supervisors relating to the taxation of railroad, express, telegraph and telephone companies is also a part of the proceedings of the board of supervisors which are required to be officially published.

**Same.** The board of supervisors is required to furnish for official publication a synopsis of the itemized reports of township trustees, showing the names of persons to whom money has been paid and the amounts, insofar as the same can be determined from the reports.

*Appeal from Muscatine District Court.*—HON. A. P. BARKER, Judge.

MONDAY, MARCH 13, 1911.

ACTION in mandamus to require the defendant Board of Supervisors of Muscatine County and the Auditor of said county to furnish to plaintiff for publication in its newspaper, which has been duly selected as an official

newspaper for said county, certain matters and proceedings which, as plaintiff contends, are directed by law to be published in said official paper at the expense of the county. On a hearing on the merits, the lower court directed defendants to furnish to, plaintiff various matters for publication as prayed in the petition and from this order defendants appeal.—*Affirmed.*

*I. S. Pepper* and *J. R. Hanley,* for appellants.

No appearance for appellee.

McCLAIN, J.—The plaintiff is the publisher of one of the official papers duly selected in Muscatine County, in accordance with the provisions of Code, section 441, which section provides that "all the proceedings of the county board of supervisors, the schedule of bills allowed, and the reports of the county treasurer, including a schedule of the receipts and expenditures shall be published at the expense of the county during the ensuing year" at a rate of compensation specified. The questions raised by the answer to plaintiff's petition are as to whether certain matters and proceedings described in the petition constituted the matters and proceedings which should have been furnished by the defendants to the plaintiff for publication in such paper at the county's expense.

I. In Code Supp. 1907, section 1087-a5, provision is made for payment of expenses of primary elections; the provision being that: "Such expenses shall be paid one-half by the county in which the said primary election is held and one-half by the state. The board of supervisors of each county shall audit the entire expense and certify the same to the executive council, which shall thereupon order a warrant for one-half of the amount to be delivered to the county, which shall thereupon pay the

1. COUNTIES: proceedings of supervisors: official publication.

entire amount." The contention for appellants is, in this respect, that such expenses are certified by the board of supervisors to the executive council and only paid on their allowance by the later. The statute is perhaps somewhat ambiguous, and in this case the secretary of the executive council advised the county auditor that certain items of the expense certified by the board of supervisors were not allowed by the council. We need not pass upon the power of the executive council to disallow items of claims, or upon the effect of its disallowance of an item as to the liability of the county for one-half of the amount of the item disallowed. It is plain from the language of the statute that the board of supervisors is constituted a tribunal to audit the expenses of the primary election and to certify to the executive council the items of expense found to be proper for the purpose of having onehalf of the amount paid by the state. This action of the board in auditing and certifying such expenses is certainly a part of its proceedings, and a schedule of such items is certainly a schedule of bills allowed within the provisions of section 441 above referred to. The lower court did not err, therefore, in directing that the proceedings of the board of supervisors in this matter be furnished to the plaintiff for publication. It is immaterial, as we think, that the statute relating to primary elections, passed subsequently to the enactment of the Code in which section 441 is found, makes no reference to such publication. The provisions of section 441 are general and must be construed as relating to proceedings subsequently provided for as well as those provided for in the Code itself.

II. In Code, sections 1149-1156, are found provisions for the canvass by the board of supervisors of the returns from the precincts of the county of votes cast, at the general election. The board is directed to make abstracts of the ballots cast in the county for each office for which votes are cast at

2. SAME.

such election with a declaration as to county officers of the names of the persons elected to such offices. The contention for appellants is that in canvassing the returns of the general election the board of supervisors acts as a board of canvassers, and that the proceedings of such board of canvassers are not required to be published under the provisions of Code, section 441, or otherwise. This contention is without merit. The provision of Code, section 1149, is that "the board of supervisors shall open and canvass the returns and make abstracts," and the fact that in succeeding sections the board of supervisors acting in the discharge of this duty is referred to as "the board of county canvassers" is wholly immaterial. The proceedings of the county board of canvassers are proceedings of the board of supervisors. There is no provision for the record of such proceedings save as such record is a part of the records of the board of supervisors. This identical question was not raised or discussed in *Clark v. Lake,* 146 Iowa, 109, decided since the present case was decided by the lower court; but in that case it was held that the proceedings of the board of supervisors in canvassing the votes from the different precincts should be furnished to the official papers of the county for publication, and the court therefore necessarily held by implication that the proceedings and abstracts of the board of canvassers were portions of the proceedings of the board of supervisors as such. The lower court did not err in requiring the defendants to furnish to plaintiff for publication the proceedings of the board of supervisors in relation to its canvass of election returns, showing the fact of such canvass and abstracts of such returns.

III. In Code, section 1337, a portion of the chapter relating to assessment of taxes and a part of the general

3. SAME.

scheme for the taxation of railway companies upon an assessment made by the executive council, it is provided that said council "shall trans-

mit to the county auditor of each county, through and into which any railway may extend, a statement showing the length of the main track within the county, and the assessed value per mile of the same, as fixed by ratable distribution per mile of the assessed valuation of the whole property;" and in Code, section 1338, it is provided that, "at the first meeting of the board of supervisors held after said statement is received by the county auditor, it shall cause the same to be entered on its minute book, and make and enter therein an order stating the length of the main track and the assessed value of the railway lying in each city, town, township or lesser taxing district in its county, through or into which said railway extends, as fixed by the council, which shall constitute the taxable value of such property for taxing purposes." We think that the entry required to be made by the board of supervisors on its minute book under the section last above referred to is a part of the proceedings of the board of supervisors which should be furnished for publication as provided in section 441. Such entry furnishes the official finding of the taxable value of the railways in the county, and it is on such finding that the property is to be assessed. We reach the same conclusion with reference to Code Supp., section 1130, which directs the board to make a similar entry in its minute book of the assessment furnished by the executive council of the lines of telegraph and telephone companies within the county, and as to the construction of Code Supp., section 1346g, which relates to the entry on the minute books of the board of supervisors of the order transmitted by the executive council stating the length of the routes and the assessed value of each within the county of express companies. So far as the present case is concerned, there is no distinction between these three sections. Counsel for appellants suggest that it would be of no practical use to the people of the county to publish the items contained in the vari-

ous orders of the executive council transmitted to the county under these sections, and it may be conceded that, as appears from the record before us, these various orders are necessarily somewhat voluminous; but this is a matter for legislative regulation. We have no question as to the proper interpretation to be put upon the statutes. We. therefore hold that the finding of law by the lower court that these matters were proper to be furnished for publication was correct.

IV. In Code .Supp. section 1566a, it is provided that the trustees of each township shall file with the board of supervisors in each year "a full and itemized account

4. SAME.

verified by the township clerk showing each item of expenditure and receipts of all moneys received and disbursed during the preceding year for road purposes in said township, which report shall remain on file with the county auditor and omitting certificates and verifications of township officers a synopsis thereof showing the names of all persons to whom money had· been paid and the amount paid to each shall be published in the published report of the proceedings of the January session of the board of supervisors." It appears that the defendants furnished for publication in plaintiff's paper a statement of all the moneys received by the trustees of each township and paid out by such trustees as shown in their report. But we think the lower court was correct in finding as a matter of law that it was the duty of defendants to furnish to plaintiff for publication in its newspaper at the expense of the county a. synopsis of the itemized reports of the township trustees showing the names of all persons to whom money had been paid and the amount paid to each in so far as the same could be determined from the reports and the accompanying vouchers on file. Certainly less than this would not be a compliance with the plain provisions of the statute.

V. Something is said in appellants' argument as to

laches on the part of the plaintiff in not sooner procuring these matters for publication. The action was instituted in March, 1909, and related to the proceedings of the board of supervisors during a period commencing in June, 1908, and ending in January, 1909. No particular time is specified in Code, section 441, within which the publication contemplated shall be made; but it is provided that the selection of the official papers shall be made at the January session of the board of supervisors in each year, and that the publication at the expense of the county of the matters to be published "shall be during the ensuing year." Plaintiff's newspaper was duly selected as an official paper in January, 1908, and again in January, 1909. It may be that plaintiff was not entitled by an action instituted in 1909 to enforce the furnishing of matters which should have been published in 1908; but no question of this kind was made in the lower court, and we have no occasion now to pass upon it. We are not reviewing any ruling of the lower court as to the statutory expenses of publication for which plaintiff should be allowed compensation; we are only determining, as the lower court was asked to determine, what matters were required to be furnished by the defendants for publication in plaintiff's paper.

The orders and judgment of the trial court are *affirmed*.